[No. 1716.  Decided June 7, 1895.]

H. J. SNIVELY, *Appellant*, v. DAVID MATHESON *et al.*, *Respondents*.

NON-TRADING PARTNERSHIP—WHAT CONSTITUTES—AUTHORITY OF PART-
NER TO EXECUTE NOTE AND MORTGAGE.

A partnership organized for the purpose of transacting a general contracting and building business is a non-trading partnership, and one partner cannot, in the absence of authority, usage or necessity therefor, bind the partnership by the execution of a promissory note and mortgage.

In an action to foreclose a chattel mortgage executed in the name of a partnership to secure a promissory note, to which one of the partners has set up the defense that their firm was a non-trading partnership and that the note and mortgage had been executed by one partner without the knowledge or consent of his co-partner, and contrary to their articles of agreement, the plaintiff cannot introduce proof to show that the property mortgaged belonged to the partner who had executed the mortgage.

*Appeal from Superior Court, Kittitas County.*

*Edward Pruyn*, and *Fred Miller*, for appellant.

*Wager & Graves*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the appellant against David Matheson and Charles Dickson, co-partners under the firm name and style of Matheson & Dickson, to foreclose a chattel mortgage on a certain grading outfit comprised of mules, scrapers, etc., and given to secure a certain promissory note signed by Matheson and Dickson in the partnership name. G. E. Dickson, who had obtained judgment against the firm of Matheson & Dickson for something over $600, and who had attached the property embraced in the

chattel mortgage given to appellant, was also made a party to the action.

The complaint alleges that the defendants, Matheson and Dickson, executed and delivered to plaintiff the promissory note above mentioned, and that they secured the same by the execution and delivery of the chattel mortgage above referred to, and contains the other necessary allegations in regard to the record of the mortgage, etc.

The defendant, Charles Dickson, one of the firm of Matheson & Dickson, answered separately, and denied the execution and delivery of the note and mortgage by the firm of Matheson & Dickson; denied the reasonableness of the attorney's fee, which was alleged in the complaint to be. $250; denied that the appellant was the owner and holder of the note sued upon; and affirmatively alleged that the co-partnership between him and respondent Matheson was one for the purpose of carrying on a contracting business for work to be performed by men and teams, and for sharing the profits and losses of such work; alleged that by the articles of co-partnership entered into between them it was agreed that neither of the parties of said copartnership should have the power to incur any liability without the express consent of the other member thereof; denied any indebtedness on the part of the firm of Matheson & Dickson to the appellant; and alleged that the note and mortgage executed by Matheson to appellant were made without any consideration and were executed and delivered by Matheson to appellant with the intent and design on the part of said Matheson and appellant to cheat and defraud said defendant, and to cheat and defraud the creditors of said co-partnership, and for the purpose of carrying out a conspiracy between said Matheson and appellant to

cheat and defraud the said creditors by transferring and disposing of the property of said co-partnership to appellant; alleged notice on the part of appellant that said Matheson had no right to incur any liability for the firm of Matheson & Dickson, or to mortgage any of its property; and many other allegations not necessary to mention here.

The separate answer of respondent G. E. Dickson simply set up his rights under his judgment and levy, and affirmatively alleged that the property sought to be foreclosed by appellant was all the property of the firm of Matheson & Dickson, and that the said mortgage to appellant was made by said Matheson with intent to hinder, delay and defraud the creditors of said partnership, etc.

The reply of the appellant denied the allegations contained in the affirmative defenses of all of the respondents.

Upon the trial of the cause the court found that appellant's mortgage was null and void and gave him no lien on said partnership property, and denied the foreclosure thereof; but decreed that the lien of the respondent G. E. Dickson, on the property described in the complaint, by virtue of the attachment set out in his answer, was a valid and subsisting lien on said partnership property.

The pertinent point to be decided in this case is the extent of the power of one partner to bind his co-partners to a contract entered into by him alone. It is contended by the appellant in this case that this partnership was a general or trading partnership as distinguished from a non-trading partnership, and some few cases are cited which would tend to sustain this contention. But the overwhelming weight of authority places this partnership in the list of non-trading part-

nerships.   The essential conditions of the articles of agreement are as follows:

"That the said David Matheson and Charles Dickson do hereby associate and enter into co-partnership one with the other for the purpose of carrying on the business of general contractors and builders under the firm name and style of Matheson & Dickson. . . . And do hereby agree one with the other as follows, to-wit:

"First. That each party to this agreement shall give his whole time and attention to the business, the said David Matheson to have charge and superintend the outside work of said firm, and the said Charles Dickson to keep all books and to attend to all other clerical work and have the purchasing of all materials needed.

"Second. No contract shall be entered into by either party hereto without the consent of the other, and no stock or materials shall be purchased, or any liability incurred, by either party without the consent of the other.

"Third. Neither party to this agreement shall endorse or become bondsman or surety on any instrument of writing not connected with the business of the firm during the existence of this partnership.

"Fourth. Each party shall have an equal interest in said co-partnership and the co-partnership property and effects and all profits arising from such co-partnership, after deducting all losses and expenses, shall be divided equally between said David Matheson and Charles Dickson, share and share alike."

Thus it will be seen that this was in no sense a trading or general partnership, but that its purpose was special and limited to the business of contracting and building, a business which in no sense buys or sells merchandise of any character. There is some attempt in the testimony to show that a mercantile business was carried on in connection with the contracting business, but it amounted simply to this, that a very limited amount of goods were furnished by the

contractors to the men who were working for them, and the price of these goods deducted from their wages. The trade was limited to their own workmen and a portion of their wages was paid in these goods instead of with money. They did not represent themselves to be traders with the outside world, or traders in any sense whatever. In fact, it is conceded that they had not been doing business of any kind for a long time prior to the execution of the note and mortgage; that the livestock was out on pasture and the other stock was stored, and that there was no prospect of any resumption of active business by this firm. So that the question of the power of Matheson to execute this note and chattel mortgage, if discussable at all, must be discussed from the standpoint of a partner in a non-trading partnership.

The general rule is that, so far as a general partnership, or, in other words, a trading or mercantile partnership, is concerned, each partner constitutes the other his agent for the purpose of entering into all contracts for him within the scope of the partnership business. This power rests in the usage of merchants and grew out of the necessities of commercial business. Therefore the doctrine of implied liability received the sanction of the law and has for a long time been, and now is, enforced by the courts. But this implied liability does not extend to partners in non-trading partnerships. In such cases the rule announced above is reversed and the presumption is that one partner has no power to bind the other partners. Hence, before recovery can be obtained upon a contract entered into by one partner in a non-trading partnership against the other partners, it must be affirmatively shown by the party attempting to bind the non-contracting partners, either that the authority to bind was conferred

by the articles of incorporation, or that authority had been specially conferred, or that it had been the custom of such partnership to recognize this right to such an extent as would give innocent dealers a right to rely upon the custom.

This doctrine was substantially announced so early as 1829, in *Dickinson v. Valpy*, 10 Barn. & C. 128. In this case the partnership was a mining company, formed for the purpose of working mines. Justice LITTLEDALE, in speaking of the subject in hand, said:

"In the case of an ordinary trading partnership, the law implies that one partner has authority to bind another by drawing and accepting bills, because the drawing and accepting of bills is necessary for the purposes of carrying on a trading partnership; but it does not follow that it is necessary for the purposes of carrying on the business of a mining company. Evidence of the nature of the company ought to have been given, to show that, in order to carry into effect the purposes for which it was instituted, it was necessary that individual members should have the power of binding the others by drawing and accepting bills of exchange. . . . One of several persons jointly interested in a farm has no power to bind the others, by drawing or accepting bills, because it is not necessary, for the purposes of carrying on the farming business, that bills should be drawn or accepted. The object of persons concerned in such an undertaking is to sell the produce of the farm; and though, with a view to such sale, it may be necessary to buy many things in order to raise and put the produce in a saleable state, yet it is not necessary for that purpose that bills of exchange should be drawn. Even if that were necessary for the purpose of carrying on a mining concern, though not for the purpose of managing a farm, it was incumbent on the plaintiff, in this case, to have shown, either from the very nature of this company, that it was *necessary*, or, from the practice in other similar companies, that it was *usual*."

Certainly a mining business is as general a business as that of contractors and builders. All the judges concurred, by separate opinions, in this decision, and the general doctrine is laid down at length as we have announced it above.

Bates on Law of Partnership, § 343, announces the general rule to be that in non-trading partnerships no authority to sign mercantile paper by one partner is implied, and that it makes no difference that it was for the benefit of the firm. This rule is sustained by the great weight of authority, although the author says that, nevertheless, there are a number of cases in which mercantile paper has been held binding on such firms.

"The test seems to be," says the author, "whether the paper is essential to carry into effect an ordinary purpose for which the partnership was formed. By such test it would seem that a note to pay a debt or to borrow money, even though it be borrowed to pay a debt or make a purchase, may not be binding without proof of assent of the other partners, or a usage of such business."

The same rule is substantially announced in Story on Partnerships, § 102.

In *Smith v. Sloan*, 37 Wis. 285 (19 Am. Rep. 757), which is a leading case, where the court collated the authorities, it was held that one partner in a non-trading partnership cannot bind his co-partner by a bill or note, drawn, accepted or endorsed by him in the name of the firm, not even for a debt which the firm owes, unless he have express authority therefor from his co-partner, or unless the giving of such instrument is necessary to the carrying on of the firm business, or is usual in similar partnerships, and that the burden is upon the holder of the note to prove such authority, necessity or usage.

In this case there was no proof of the necessity, or of the authority, or of the usage. In fact the giving of the mortgage in question would have more of a tendency to destroy the business than to assist in carrying on the business of the firm, for all the property that was owned by this firm was included in this mortgage.

*Deardorf v. Thacher*, 78 Mo. 128 (47 Am. Rep. 95), decided that "the members of a firm engaged in the insurance, real estate and collecting business, have no implied power to bind each other by commercial paper in the name of the firm. Such power can only arise from consent, ratification, custom or necessity." The court there quotes the case of *Hedley v. Bainbridge*, 3 Ad. & El. (N. S.) 315, where Lord DENMAN, chief justice, said:

"No doubt a debt was due from the firm; but it does not follow that one partner had authority to give a promissory note for that debt. Partners in trade have authority, as regards third persons, to bind the firm by bills of exchange, for it is in the usual course of mercantile transactions so to do; and this authority is by the custom and law of merchants, which is part of the general law of the land. But the same reason does not apply to other partnerships."

In *Pooley v. Whitmore*, 10 Heisk. 629 (27 Am. Rep. 733), where a member of a public partnership executed his note for his individual debt, but indorsed it in the firm name to a *bona fide* holder, it was held that the firm was not *prima facie* liable upon it; and the distinction between the implied powers of trading and non-trading partnerships was discussed. To the same effect is *Friend v. Duryee*, 17 Fla. 111 (35 Am. Rep. 89). *Harris v. Mayor, etc., of Baltimore*, 73 Md. 22 (25 Am. St. Rep. 565, 17 Atl. 1,046), is a case that seems to us to be exactly in point. This was a partnership

formed for taking and executing contracts for paving and curbing streets, etc., and the court decided that it was not a commercial partnership, and that the individual members thereof had no implied authority to borrow money and make notes therefor to bind the firm, in the absence of proof to show actual necessity, or usage, for the exercise of such power in conducting the business. This case reviews the authorities and is well argued, and the conclusion was reached upon a petition for rehearing, in the former opinion the court having come to the conclusion that the implied authority existed.

Our attention was called in oral argument, by counsel for the appellant, to the dissenting opinion of Judge BRYAN, in this case, as the better reasoning. Judge BRYAN had written the former opinion of the court, which was reversed, and still maintained his original views. But, whatever may be the strength of his reasoning, as compared with that of the majority of the court, the majority opinion expresses the decision of the court and is so in conformity with the great weight of authority on this subject that we feel constrained to follow it, although we do not wish to be understood as impliedly asserting that the argument of the dissenting judge was more cogent than that of the majority.

Another well reasoned case in support of respondents' contention is *Judge v. Braswell*, 13 Bush, 67 (26 Am. Rep. 185). This was a partnership formed of several for the purpose of carrying on the business of mining on lands leased for that purpose, with power to purchase the title to the mining lands for the purposes of the partnership. The articles prohibited any member of the partnership from contracting any debt on account of the partnership without the consent of

all the members.  One of the members, without the knowledge or consent of his co-partners, purchased mining lands from third parties ignorant of that restriction, and in payment gave drafts in the firm name upon one of the other members, who refused to honor them.   In an action by the payee against the firm, held: First, that the partnership was a non-commercial partnership; Second, that the power of one partner to bind the co-partners rests upon usage alone and does not apply to non-commercial partnerships without proof of usage or express authority; Third, that there is no implied authority in such partnership to purchase lands for the firm.   In that case the court said:

"It is contended, however, that the purchase of lands being within the scope of the partnership, each member had implied authority to make purchases for the firm, and that whatever may have been the rights and duties of the partners *inter esse*, and the express limitation upon their power contained in the written agreement between them, third persons dealing with a single partner, without notice of the private agreement between them, cannot be affected by it.   This is undoubtedly true as to commercial partnerships; but it is a rule of the law merchant which has been adopted into the common law, and rests for its support upon the custom of merchants alone, and has no application to non-commercial partnerships."

This is a broader case in favor of the doctrine that it was a general mercantile partnership than the one at bar, for there the partnership was organized for the purpose of carrying on a mining business on leased lands, and for the purpose of buying and obtaining title to mining lands; and the power which was exercised by this partner, viz., that of buying mining lands, fell especially within the scope of the partner-

7 — 12 WASH.

ship business, and yet the court held that it was a non-trading partnership and that no implied authority existed.

We think it is not worth while to discuss the authorities further, for, as we have above stated, while there are some few cases holding to the contrary doctrine, yet the rule, as we have stated it, is sustained by the overwhelming decisions, both ancient and modern.

Neither is there anything in the testimony to take this case out of the rule, equitably or legally. There was some attempt to show a custom of this kind in one or two instances, but we are satisfied from the testimony that Dickson gave these orders under a misapprehension of the true state of affairs, and by reason of false representations made to him by Matheson. On all these questions in controversy between Dickson and Matheson, it must be noted that Matheson's testimony in many respects is flatly contradicted by the testimony not only of Dickson but by that of Johnson and Warner, who were disinterested parties.

We do not think that the court erred in not allowing the appellant to show that Dickson had no interest in the property mortgaged, under the condition of the pleadings in this case, and in the face of the articles of agreement which were made a part of the pleadings and which were not denied.

Finding no substantial error, the judgment will in all things be affirmed.

HOYT, C. J., ANDERS, SCOTT and GORDON, JJ., concur.