[No. 19837.  *En Banc.*  February 7, 1927.]

## VANCOUVER NATIONAL BANK, *Appellant*, v. ALMA D. KATZ et al., *Respondents*, JOHN A. LIPP, *Defendant*.[1]

[1] PARTNERSHIP  (16) — RELATION — EVIDENCE — SUFFICIENCY  AS AGAINST PARTNERS.  A partnership is sufficiently established by a written contract providing that one of the parties was to operate a dairy farm belonging to the other parties, the profits and increase to be equally divided between them, and by proof of the course and conduct of the business indicating a general partnership.

[2] EVIDENCE (150, 156, 162)—PAROL EVIDENCE TO VARY WRITING— BILLS AND NOTES—PARTIES TO INSTRUMENT—PERSONS NOT PARTIES OR PRIVIES TO INSTRUMENT.  Parol evidence that strangers to notes given by another, were partners of the maker and liable as for a partnership debt, is not inadmissible as varying the terms of the writing; since the rule against such parol evidence is not applicable to strangers to the instrument, who are not estopped thereby, and estoppels must be mutual.

[3] PARTNERSHIP (43)—LIABILITY AS TO THIRD PERSONS—UNDIS-CLOSED PRINCIPAL.  An undisclosed principal is liable on a note given by an agent on his behalf.

[4] PARTNERSHIP (60)—PLEADING—ISSUES AND VARIANCE.  A com-plaint against copartners based on notes given by one of the partners for a partnership debt, is not demurrable because the notes were not signed by all the partners, where the complaint sets out, also, the facts which gave rise to the notes.

[5] PARTNERSHIP (38, 42)—LIABILITIES AS TO THIRD PERSONS—NEGO-TIABLE INSTRUMENTS—RATIFICATION.  Undisclosed partners in the operation of a dairy farm cannot avoid liability upon notes given to a bank by the partner in open possession of the busi-ness, entrusted with the management and general authority to make purchases, involving the borrowing of money, which was known to and acquiesced in by the other partners.

Appeal from a judgment of the superior court for Clark county, Simpson, J., entered June 17, 1925, in favor of the defendants, upon granting a non-suit, in an action on contract. Reversed.

[1]Reported in 252 Pac. 934.

*McMaster, Hall & Schaefer,* for appellant.

*Ridgway, Johnson & Montgomery,* for respondents.

FULLERTON, J.—This action was instituted by the appellant, The Vancouver National Bank, against the defendant, John A. Lipp, and the respondents, Alma D. Katz and Otis B. Wight, to recover upon an indebtedness evidenced by three promissory notes; one for the sum of two thousand seven hundred dollars, dated August 6, 1923, and due six months after its date; one for the sum of two hundred dollars, dated December 30, 1923, and due thirty days after its date; and the third for the sum of one hundred dollars, dated January 9, 1924, and due thirty days after its date. Each of the notes was signed as maker by the defendant Lipp, and on their face bore no indication that either of the respondents Katz or Wight was in any manner obligated thereon. Lipp disappeared shortly after the execution of the last of the notes and was not personally served with summons in the action and did not appear therein. The respondents appeared and defended. The trial court, at the conclusion of the evidence on the part of the appellant, sustained a motion for a non-suit, and thereafter entered a judgment dismissing the action with prejudice.

[1] The evidence discloses that the respondents are residents of the city of Portland, in the state of Oregon. Katz is the general agent of an insurance company with headquarters in the city named, and Wight is a physician practicing his profession in the same city. At the time of the trial, they owned, and for a number of years prior thereto had owned, either as partners or as tenants in common, a farm of about six hundred and thirty acres, situated in the state of Washington, some three and one-half miles northwest of the city of Van-

couver. The farm was known as the "Waucomah Farm," and was used in the operation of a dairy. Lipp's connections with the farm and dairy began in the fall of the year 1912. He was then employed as manager at a yearly salary. This arrangement continued until April 12, 1918, when a new agreement was entered into. The new agreement continued Lipp as manager of the business, but changed the manner of his compensation. Among other things, it was provided:

"The party of the second part herein [Lipp] shall be entitled to the possession, use and occupation of said Waucomah Farm for the purpose of conducting a dairy thereon, and cultivating the same in the manner heretofore conducted, for the period commencing on the first day of April, 1918, and ending on the 1st day of November, 1918. . . . The total increase of the live stock mentioned in the inventory to be hereto attached and all other produce on such farm grown and produced by the party of the second part shall be equally divided between the parties of the first part and the party of the second part herein, after the original stock shall have been made whole, and after all expenses of conducting such dairy and cultivating such farm shall have been paid. . . . The party of the second part herein and his family shall give their entire time, attention and skill to the conducting of such dairy and tilling of such farm during the term of this agreement. . . . All expenses incurred in conducting such dairy and farm shall be borne equally between the parties of the first and second parts. . . . A settlement shall be made between the parties of the first part and the party of the second part on the 10th day of each month, commencing on the 10th day of May, 1918, at which times a settlement shall be made as fully as possible between the parties and the net profits divided between them. However, a general complete settlement shall be made on the 1st day of November, 1918, between the parties hereto, at which time all of

the business affairs arising under this contract shall be fully settled and each of the parties hereto shall be entitled to receive his respective profits arising from the conduct of such dairy and farm. All receipts from sales made of produce from the operation of such dairy and farm shall be deposited in the First National Bank of Portland, Oregon, such funds to be paid out on checks signed by Alma D. Katz or Otis B. Wight. . . . It is the intention of the parties hereto that all of the products of said dairy and farm of whatsoever kind or nature shall be divided equally, or the sale price thereof equally divided between the parties of the first part and the party of the second part herein."

This agreement, it will be observed, expired by its terms on November 1, 1918. It appears, however, to have been continued as the operative agreement between the parties for a longer period of time, as it has attached thereto an amendment entered into on November 26, 1920, relative to the number of cattle that should be kept on the premises, changing the number from thirty cows to fifty-three cows and ten heifers.

The wife of the defendant Lipp testified to a third agreement entered into in the early part of the year 1922. This agreement, although stated by the witness to be in writing, was not produced at the trial; her further testimony being that it was carried away from the farm by the respondents within a few days after Lipp's disappearance, along with other papers of Lipp. Mrs. Lipp was permitted to give oral evidence as to the writing. She testified that it was along the lines of the agreement of 1918, the changes being in the relation of the parties, and the share that her husband was to have in the business. In substance, she testified that a partnership was formed between her husband on the one part and the respondents on the other, in which her husband was to manage the farm and dairy as before, to have a half interest in all the increase of

the stock on the farm and in such new equipment as should be put thereon, and to share in the profits and losses of the business. As further evidence of the existence of such a partnership, declarations of one of the respondents to that effect were shown. Lipp also, at a preliminary hearing had looking to the formation of a diking district, was sworn as a witness in opposition thereto. At this hearing, his interest in the business was directly questioned, and he testified that his interest was that of a partner in the business conducted on the farm. At this hearing the respondent Katz, if not the other respondent, was present, and no question was made as to the truth of his statement by either of them. It was shown furthermore that the products of the dairy were sold in the city of Portland, principally to large consumers, and that the milk truck in which the products were carried to the consumers passed through the city of Vancouver daily, and that it bore on its sides the legend, ''Waucomah Farm. J. A. Lipp.''

Lipp, during his connection with the business, especially in the later years, made large purchases of supplies for use on the farm and in the business. These consisted of feed for the farm stock, hardware, groceries, and such like. At times also, when the products of the dairy were insufficient to supply the customers, he made purchases of cream and milk from other dairymen. He employed the laborers necessary to the operation of the business. At all times one or more such was in the employ, and at times, during the harvesting seasons especially, they amounted to considerable numbers. These purchases and hirings were generally made by Lipp in his own name, as if he were the sole proprietor of the business. The purchases shown in the record were largely credit purchases, and were charged by the dealers to Lipp individually. Payments

of the indebtedness thus incurred were usually made by Lipp. For the products sold in Portland collections were made by the respondents, who would deposit the collections in a Portland bank, under the name of "Waucomah Farm," and remit to Lipp directly by checks drawn on the account. These checks Lipp would deposit with the appellant bank in an account under the name of J. A. Lipp, and from this he would pay the indebtedness incurred, as above indicated, by checks drawn on the deposit.

The record does not disclose the precise time Lipp began dealing with the bank, but, from the beginning of the year 1922 to the time of his disappearance, practically all of his financial transactions with relation to the business were had with the bank. The checks received from the respondents would not at times meet the current obligation, and Lipp would borrow from the bank. The notes were all signed "J. A. Lipp." In all, some sixty-three of such notes were given and, for the greater part, represented short time loans. As they matured, they were either paid or paid in part and in part renewed. The indebtedness, however, gradually increased and in the end was represented by the notes sued upon in this action. The proceeds of the loans were expended in the furtherance of the dairy business. Possibly, some small part was used for the personal benefit of Lipp, his wife and family. But these amounts were inconsequential.

The respondents knew of Lipp's dealings with the bank. Not only were they in close touch at all times with the business, but they at times drew checks on the Portland bank payable directly to the appellant bank.

The appellant, while it knew that the respondents owned the farm, did not know the interest Lipp had in the business conducted thereon. Lipp represented to

it orally that the business was his and at one time made a written statement to that effect. It did know, however, that Lipp was operating the dairy on the farm, that he was paying the expenses thereof, and that he was carrying accounts with merchants in the city of Vancouver, incurred for supplies used on the ranch, in his individual name, and it extended credit to him in the belief that the business, and the property used in the business, could be made responsible for the indebtedness thereby incurred.

While the existence of a partnership between Lipp and the respondents is denied in the respondents' answer, and while it is contended that there is not sufficient evidence on the question to sustain a finding to that effect, we think the evidence in this respect sufficient. Indeed, the trial judge, in his oral statements made in passing upon the motion for non-suit, so indicated.

[2] He based his ruling, as we understand his remarks, upon the fact that the appellant's action was based upon the notes, and that, since these were executed as maker by Lipp individually, there could be no recovery thereon against the respondents, notwithstanding there was a partnership, and notwithstanding the indebtedness was incurred and the money procured thereby was expended in the furtherance of the partnership business. His theory seemed to be that the notes were written contracts, representing the entire agreement, and that to permit it to be shown that the debt they represented was a partnership debt on which the respondents were bound, would be to violate the parol evidence rule.

It is our opinion that the judgment entered cannot be rested upon the rule invoked by the trial court. The rule that parol testimony is not admissible to vary or contradict a written instrument applies only in con-

troversies between the parties to the instrument and those claiming under them. It has no application in a controversy between a party to it on the one hand and a stranger to it on the other, for a stranger, not having assented to the instrument, is not bound by it, and is at liberty to show, when his interests are involved, the truth of the matter, however much the truth may be contrary to the terms of the writing. And since estoppels must be mutual, where a stranger to the instrument is free to vary or contradict it by parol evidence, his adversary, although a party to the instrument, is equally free so to do, else he would be at a disadvantage with his opponent. These principles have the sanction of almost universal authority and have been repeatedly sanctioned by this court. *Carmack v. Drum,* 32 Wash. 236, 73 Pac. 377, 785; *Bright v. Hanover Fire Ins. Co.,* 48 Wash. 60, 92 Pac. 779; *Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310; *Watson v. Hecla Mining Co.,* 79 Wash. 383, 140 Pac. 317; *Ransom v. Wickstrom & Co.,* 84 Wash. 419, 146 Pac. 1041, L. R. A. 1916A 588; *Godefroy v. Hupp,* 93 Wash. 371, 160 Pac. 1056, Ann. Cas. 1918E 494.

The rule is not different merely because the writing is in the form of a promissory note. As between the maker and the payee, a promissory note is but a simple contract to pay money. It is obligatory only on the same terms and conditions that other simple contracts of a like purport are obligatory. It may be defended against for want of consideration, for fraud and deceit, and for any of the other causes which will avoid simple contracts. Its terms are, therefore, obligatory only as between the immediate parties to it. Strangers cannot invoke it as conferring upon them rights or privileges which they otherwise would not have. So, in this instance, if the debt for which the notes were given

was the partnership debt of Lipp and the respondents, the respondents cannot, merely because the writing was in form a promissory note, successfully urge it as a defense to their liability for the debt.

It is not here, of course, asserted that one partner may not pay a partnership debt by his individual note, or that such a payment will not relieve his copartners from liability on the debt. But this result follows only where such is the agreement and intent of the parties. The creditor must accept the note as payment, or must otherwise agree to relieve the copartners from the obligation. But such was not the agreement or intent in the instant case. The record very clearly shows that this was not the understanding. The notes were taken without knowledge on the part of the payee that the respondents were obligated on the debt. The appellant was advised, and had the right to believe, that the debt was the debt of Lipp, and that the property represented to be behind the debt was the property of Lipp. Nor does the fact that the payee did not know at the time of taking the notes who were the real obligors on the debt make a difference in its rights with respect thereto. A person is bound by his contracts only when he enters into them with knowledge of his rights, or with knowledge of such circumstances as would put him upon inquiry. Facts affecting the transaction concealed from him by the other party, which he does not know and which he has no reasonable cause to believe exist, have ever been regarded as grounds for avoiding a contract. If, therefore, the debt represented by the promissory notes sued upon was in fact the debt of a partnership composed of Lipp and the respondents, we see no reason either in law or equity why the respondents should not be held to answer therefor.

[3]  If, on the other hand, the defendant Lipp could be said to be the agent of the respondents, then the respondents are liable on the notes. As we said in *Belt v. Washington Water Power Co.,* 24 Wash. 387, 64 Pac. 525, quoting from Pomeroy on Contracts, § 89:

"When the agreement is executed by an agent in his own name, he appearing to be the contracting party, the requisite as to parties is complied with. The principal may maintain a suit and enforce the contract, and it is immaterial whether the principal was actually known during the transactions, or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf. Under the same circumstances, it is now the rule that a suit may be maintained, and the contract enforced against the principal, even though his name nowhere appears on the face of the writing, and even though he was undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his behalf."

[4]  But the respondents say that this is an action upon the notes, and not upon the obligation represented by the notes. It is true the notes are set out in the complaint, but so also are the facts which gave rise to them, and the nature of the cause of action must be measured by the allegations of the complaint as an entirety. In our opinion, the complaint is not vulnerable to the objection here urged.

[5]  The trial court seems to have rested its conclusion in part upon the rule announced in our cases of *Snively v. Matheson,* 12 Wash. 88, 40 Pac. 628, 50 Am. St. 877, and *Gordon v. Marburger,* 109 Wash. 496, 187 Pac. 354, 9 A. L. R. 369. In the first of these cases, it appeared that the partnership was formed for the purpose of transacting a general contracting and building business, and it was held to be a non-trading partnership and that one partner could not, in the absence of

authority, usage or necessity therefor, bind the partnership by the execution of a note in the firm name and securing it by a mortgage on the firm property. In the second of the cases, it was held that a member of a non-trading partnership for the growing of potatoes had no power to borrow money and secure it by mortgage on potatoes belonging to the firm, where he had no duties making it necessary and there was no custom of dealing authorizing the transaction. But we think we need not deny the rule of these cases in order to support the authority of the partner Lipp in the present one. Here, the partnership was engaged in the business of conducting a dairy farm. Lipp was the managing partner. Of necessity, large quantities of supplies for use in the business must be purchased. Lipp had authority, either actually or by mutual acquiescence, to make the purchases. He could and did purchase upon credit when the returns from the business were temporarily insufficient to make cash purchases. Seemingly, his general authority as manager and his general authority to make purchases of supplies would authorize him to borrow money when needed for such purposes, but the record shows that his partners had knowledge that he was borrowing for such purposes and acquiesced in his action. Manifestly, we think, they cannot question his authority when now called upon to make good the sums borrowed.

But the inquiry need not be further pursued. Our conclusion is that the appellant made a *prima facie* case for the jury and that the trial court erred in not putting the respondents upon their defense. The judgment is reversed, and a new trial awarded.

PARKER, TOLMAN, BRIDGES, MITCHELL, ASKREN, and MAIN, JJ., concur.