**ENGSTROM v. BENZEL.**

No. 12734.

United States Court of Appeals
Ninth Circuit.

June 29, 1951.

Eggerman, Rosling & Williams and De-Witt Williams, all of Seattle, Wash., for appellant.

W. Walter Miller, Ritzville, Wash., for appellee.

Before HEALY, Circuit Judge and FEE and SOLOMON, District Judges.

JAMES ALGER FEE, District Judge.

The trustee in bankrupt of Chemurgy, a cooperative corporation, brought action against Benzel, claiming the latter had received a preference because he had received money on February 3, 1947, on a check of bankrupt drawn January 14, 1947, and within four months of the date of filing petition in bankruptcy, May 29, 1947. The cause was tried before the District Judge without a jury, on an agreed state of facts.

On January 3, 1947, Arthur Benzel endorsed and delivered to Chemurgy a negotiable warehouse receipt, intending to make a cash sale to Chemurgy of the actual wheat at an agreed net price of $1,627.50. Chemurgy failed, without fault of Benzel, to draw its check in that amount until January 13, 1947. The check was payable to Benzel, drawn on the Wenatchee Valley Branch of the Seattle-First National Bank, Wenatchee, Washington, and was received by Benzel January 14. He deposited the check in the Ritzville Branch of the Old National Bank. Upon presentation for payment to the drawee bank, the check was returned because there were no funds of Chemurgy on deposit to pay it. Benzel redeposited the check and it was presented to the drawee bank on January 27, 1947, but was not then paid because the Chemurgy account was overdrawn. This account remained overdrawn until February 3, when the check was paid out of the funds which Chemurgy then had on deposit. The Court found that "payment of said check out of the funds of Chemurgy on deposit

with the Wenatchee Valley Branch of the Seattle-First National Bank on February 3, 1947, was not such a transfer to the defendant of the property of said insolvent Northwest Chemurgy Cooperative as to constitute an unlawful preference within the meaning of Rem.Rev.Stat. of the State of Washington, § 5831-4, as the transaction was in substance and effect a cash transaction and there was no intent on the part of either party to create a debtor-creditor relationship."

■ The intention of the parties is immaterial in determining whether there was a preference. The true questions are whether there was an antecedent debt and whether the payment of the money diminished the assets of the corporation.[1] Delivery and payment are concurrent conditions[2] and mutually dependent acts. The inference to be drawn from the fact that a sale of fungible personal property is made is that there is a cash transaction.[3] In this case, it was expressly stated by the agent of the buyer to be a sale for cash. While it is stated that conclusive evidence of intention to waive performance of the condition of concurrent payment is the fact that delivery has been made without receipt of cash, it must be clear that the intention of the parties is a question of fact. Where, therefore, payment is evaded[4] by the purchaser upon delivery as a part of a cash sale, the seller is entitled to recover the goods because the buyer only has a contract right until the price is paid. If a check is taken, it is conditional payment only.[5] If the check is deliberately drawn upon a bank where there is no account of the buyer, the fraud[6] would vitiate the transaction. If the buyer had given counterfeit money in specie to the seller and de-

livery was made in reliance thereon before discovery, the situation would be the same. Where a check is received for the purchase price, the provisions of the Negotiable Instruments Act, as well as the Sales Act, must be considered.

■ A seller has a reasonable time under all the circumstances to deposit the check.[7] If, upon presentation, there are no funds and the check is refused, the seller has not retreated from his original intention and he has not extended credit. The failure of the bank to have funds on January 18, 1947, might have been accepted as proof of fraud by Benzel, and he might then have demanded the return of the negotiable instrument covering deposit of the wheat in the warehouse. The fault in not having funds on hand was that of Chemurgy. If the check had been paid upon presentation, there would have been no problem. Again, the agents of Chemurgy insisted that they intended to carry out the bargain and pay cash, and induced Benzel to redeposit the check instead of seeking other remedies. He was cozened into compliance. But he did not extend credit by believing the representations of those who spoke for Chemurgy. Again, if the check had been paid on January 27, there would have been no problem, as the four months to future bankruptcy had not begun to run. Since the payment was delayed until it fell into the period contrary to the agreement and without the fault of Benzel, neither Chemurgy nor the general creditors can take advantage of this deliberate wrong. Under the circumstances, Benzel, on February 3, still had a right to recover the negotiable instrument showing the delivery of the wheat to the warehouse. The property to this instrument

1. See Engstrom v. Wiley, 9 Cir., 191 F.2d 684.

2. Rem.Rev.Stat. § 5836-42.

3. Gustafson v. Equitable Loan Ass'n, 186 Minn. 236, 243 N.W. 106.

4. Johnson v. Iankovetz, 57 Or. 24, 102 P. 799, 110 P. 398, 29 L.R.A.,N.S., 709.

5. Quality Shingle Co. v. Old Oregon Lumber & Shingle Co., 110 Wash. 60, 187 P.

705; Standard Investment Co. v. Town of Snow Hill, 4 Cir., 78 F.2d 33.

6. Illinois Parlor Frame Co. v. Goldman, 7 Cir., 257 F. 300; Hough v. Atchison, Topeka & Sante Fe Railway Co., 10 Cir., 34 F.2d 238.

7. Rem.Rev.Stat. §§ 3576, 3583; People's State Bank of Michigan Vallee v. Brown, 80 Kan. 520, 103 P. 102, 23 L.R.A.,N.S., 824. See Engstrom v. Wiley, 9 Cir., 191 F.2d 684.

did not pass to Chemurgy until the cash was paid Benzel. When the property passed, the money was paid and there was a cash transaction in accordance with the intention of the parties.

The situation then is not entirely comparable to that in Engstrom v. Wiley, 9 Cir., 191 F.2d 684. The Trial Court also held this was a cash sale. Again, Benzel here actually got the money. There was a completed transaction and the happenings accorded with the intention of the parties. Chemurgy got title to the warehouse receipt. Benzel intended to pass title to the instrument and to be paid in money. Neither intended Benzel to be a creditor of Chemurgy. Nor was he. If speculation is permitted, Benzel might have treated himself as a creditor if the course of events had been different and the check had not been finally paid. But, under such circumstances, Benzel might have got back the warehouse receipt. Because here there was actually an exchange of one negotiable instrument for another, Chemurgy received a warehouse receipt and Benzel received a check. The stipulation of facts shows when Benzel got the money, but fails to show when Chemurgy actually took possession of the wheat itself. But, if possession was not really taken by Chemurgy until after the initiation of the four months' period, the exchange of cash for wheat would not fall within the prohibition of the statute.

The considerations just above enumerated bring up a distinction between this transaction and an ordinary spot cash sale of wheat such as that in the Wiley case. It may well be that this situation presents a stronger ground for defendant than that case. Nothwithstanding the conclusion of the Trial Court, there was here neither sale nor delivery of the wheat. There was only the transfer of the warehouse receipt.[8] The record does not show when Chemurgy got the wheat. Notwithstanding the ironclad provisions, there is doubt that a warehouse receipt can ever fully

represent the property or ever be made so that it transfers anything except the right to make a demand upon the bailee. Until Chemurgy obtained delivery of the wheat itself in specie, its rights under the warehouse receipt were probably not even comparable to those of Benzel under the check. If the wheat was delivered to Chemurgy after January 27, during the period when Benzel got the cash, there could be no question of preference. There would then be a present exchange of wheat for cash. Even appellant does not question this result.

Here again, as in the Wiley case, the holding is confined to the facts of the record without implications as to what might be the decision if the facts were different. There was a cash deal. A negotiable warehouse receipt was given and a check received in return. Possession of the wheat was obtained; the cash was received. The transaction was complete. It was not proscribed by the statute.

Affirmed.

---

8. In this respect, it is comparable to a promissory note, which, as between maker and payee, is a simple contract obligatory only on the same terms and conditions as other simple contracts. It might be defended against for want of consideration, fraud and deceit or any other conditions which might avoid a simple contact. Vancouver National Bank v. Katz, 142 Wash. 306, 252 P. 934.