[No. 12725. Department One. November 22, 1915.]

GEORGE H. TILDEN, *Appellant*, v. HANS PEDERSON, *Respondent*.[1]

PARTNERSHIP—LIABILITIES TO THIRD PERSONS—AUTHORITY OF PARTNER—PRESUMPTIONS. A copartnership for the purpose of constructing a drainage ditch is a nontrading partnership, and the presumption is that one partner has no power to bind the other unless authority had been conferred by the articles, or by special authority, or by custom.

SAME—AUTHORITY OF PARTNER—SCOPE OF PARTNERSHIP. The sale by one partner of bonds given to a copartnership in payment for work done and completed is not within the scope of the partnership, and hence is invalid where, by the articles of copartnership, the bonds were to be received and sold by the other partner; the sale not having been necessary to pay debts or carry on the business.

SAME—AUTHORITY OF PARTNER—ASSETS—CONVEYING TITLE—DISSOLUTION. Such sale would be invalid, also, because the work having been completed and the object of the partnership accomplished, there being no partnership debts, the situation was analogous to a dissolution and neither partner could convey title to the assets without the other's consent, except as limited by the contract.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 29, 1915, upon granting a nonsuit, dismissing an action on contract, tried to the court and a jury. Affirmed.

*Peters & Powell*, for appellant.

*George H. Walker* and *Fletcher Lewis*, for respondent.

CHADWICK, J.—On the 5th day of September, 1912, respondent, Hans Pederson, and R. C. Woods entered into a contract for the construction of a drainage ditch in Yakima county. In November, 1912, Pederson and Woods entered into a copartnership agreement for the purpose of carrying on the work. In general terms, it was agreed in the copartnership contract that Woods was to have active charge of the

[1]Reported in 152 Pac. 1021.

construction work, and that Pederson was to finance the proposition, and further:

"It is understood and agreed between the parties that all payments made under the contract hereinbefore mentioned shall be in warrants as provided for in said contract, and the same shall be sold by the party of the first part (Pederson) to the best advantage, and the party of the first part shall not be charged with any greater sum than the amount he receives from the sale of such warrants."

By the contract with the drainage district, it was agreed that partial payments to the contractors for work done were to be made monthly by warrants drawn against the funds of the district, as provided by chapter 46 of the Laws of 1901, p. 106 (Rem. & Bal. Code, § 4226 *et seq.*). While the work was in progress, a new drainage law, being chapter 176 of the Laws of 1913, p. 611 (3 Rem. & Bal. Code, § 4226-1 *et seq.*), went into effect. The new act provided for the issuance to the contractors of bonds instead of warrants. It is not contended that respondent did not finance the undertaking as the work progressed.

When the construction work was about completed, Woods, through R. G. Page, a banker at Sunnyside, Washington, entered into a contract with George H. Tilden, appellant, for the sale of $50,000 of the bonds at 96 cents on the dollar. There was much delay in the issuance of the bonds. The negotiations referred to occurred in the fall of 1913. The bonds were not issued until in June, 1914. In the meantime, Pederson, who had been absent in Europe, and who had taken no part in the negotiations for the sale of the bonds, returned to this country, and denying Woods' authority to contract for the sale of the bonds, sold the entire issue, amounting to $100,000, to another party.

Appellant brought this action for damages against Woods and Pederson. Trial was had before a jury, and upon the close of the plaintiff's evidence, the defendant moved the court to take the case from the jury and direct, as a matter of law,

a judgment in favor of the respondent, Hans Pederson, and against the appellant. The motion was granted. The defendant Woods made no appearance, and the court rendered judgment against him for $4,602.70, being the difference between the contract price of the bonds and the alleged value of the bonds at the time they should have been delivered.

The court held that the partnership was a nontrading partnership and that the case fell within, and was controlled by, the case of *Snively v. Matheson,* 12 Wash. 88, 40 Pac. 628, 50 Am. St. 877. The rule is there announced:

"The general rule is that, so far as a general partnership, or, in other words, a trading or mercantile partnership, is concerned, each partner constitutes the other his agent for the purpose of entering into all contracts for him within the scope of the partnership business. This power rests in the usage of merchants, and grew out of the necessities of commercial business. Therefore the doctrine of implied liability received the sanction of the law and has for a long time been, and now is, enforced by the courts. But this implied liability does not extend to partners in non-trading partnerships. In such cases the rule announced above is reversed and the presumption is that one partner has no power to bind the other partners. Hence, before recovery can be obtained upon a contract entered into by one partner in a non-trading partnership against the other partners, it must be affirmatively shown by the party attempting to bind the non-contracting partners, either that the authority to bind was conferred by the articles of incorporation, or that authority had been specially conferred, or that it had been the custom of such partnership to recognize this right to such an extent as would give innocent dealers a right to rely upon the custom."

The reasons for the rule and the authorities are so fully gone into in that case that we will not review them or cite and discuss other authorities which might be mentioned. Nor do we find the rule of *Snively v. Matheson* encroached by the later case of *Merrill v. O'Bryan,* 48 Wash. 415, 93 Pac. 917.

The rule exempting a nontrading partnership from liability for the act of a partner is well defined. It has its exceptions.

One of them is that such a partnership will not be held where it appears that the liability grows out of a transaction or contract which is essential to the business and is a necessary incident to the accomplishment of its purposes. It was so in the *Merrill* case. The object of that partnership was "to carry on trade and business as general carriers, at Dawson aforesaid, in partnership under the name and firm of The Dawson and White Horse Navigation Company." The building of warehouses, barges, and the repair of steamers was a necessary incident to the business, and hence within the scope of the partnership business.

But it seems to us that the *Merrill* case was not decided upon the theory that it was a nontrading partnership. It was a general partnership. After arguing the merit of his case, appellant suggested the difference between a trading concern and a nontrading concern, and something is said in the opinion about nontrading partnerships, but it is rather in aid of the argument made by the court than a statement of the determinative fact or principle; notwithstanding appellant insists that the rule of liability governing all partnerships, whether trading or nontrading, is, always, whether the act was within the apparent scope of the partnership. Granting, without deciding, that the rule will bear this broad statement, we are yet constrained to hold that the act relied on was not within the scope of the partnership.

The rule for determining the authority of a partner and the scope of a partnership is succinctly stated in the *Merrill* case:

"So far as third persons who deal with a partner without notice are concerned, the copartners are bound if the transaction be such as the public may reasonably conclude is directly and necessarily embraced within the partnership business, as being incident or appropriate to such business according to the course and usage of conducting it."

Measured by this rule, it cannot be said that the act of the defendant Woods was within the scope of the partnership.

9—88 wash.

The sale of bonds given in payment for work done under a contract is not a transaction that would ordinarily, directly or necessarily induce the reasonable conclusion that a partner offering them was acting within the scope of the partnership. It, in no way, pertains to the subject-matter of the contract. It is a matter in which third parties can have no possible interest. A reliable test is whether a credit has been extended on the strength of the undertaking; whether the consideration parted with has entered, either directly or theoretically, into the thing which the partnership has set about to do.

In the case at bar, so far as the record goes, the work for which the partnership had been formed had been financed, and the work had been done. The bonds were to be received in payment by one partner, and the other partner had no interest in them whatever. His right was no more than the right of an accounting.

If we treat the partnership as a nontrading concern, it was incumbent upon appellant to plead and prove, either an express authority, or that it was necessary to make the sale to pay debts or to carry on the business of the partnership, or that the partnership had so waived the rule by its customs that it ought to be held by reference to the doctrine of estoppel. If we treat the partnership as general, we still find that the sale of the bonds was a thing not within the scope of the partnership. Under either theory, the judgment was proper.

There is another ground upon which the judgment may rest. The object of the contract of Pederson and Wood being to excavate a drainage ditch, and that object being accomplished, it would seem that the case bears a perfect analogy to a partnership after dissolution, the assets being in the hands of one or both of the partners.

Lord Kenyon says in *Abel v. Sutton,* 3 Esp. (Eng.) 108: "The moment the partnership ceases, the partners become distinct persons; they are tenants in common of the partnership property undisposed of, from that period." The courts of this country have usually put a limitation upon this rule

that is: "So long as the partnership debts remain unpaid either partner can sell property or transfer an asset in discharge of partnership liabilities." Bates, Law of Partnership, §§ 685, 686; *Rice v. McMartin*, 39 Conn. 573; *Ruekman v. Decker*, 23 N. J. Eq. 283; *Hogendobler v. Lyon*, 12 Kan. 276. In England the rule of the cases has been made the subject of an act of Parliament, Partnership Act, 1890, § 38, Lindley, Partnership, p. 263.

There being no debts to pay and the purpose of the partnership, as measured by its objects, being accomplished, it would seem to follow that the rights of the individual partners *inter se* would be limited by the contract of partnership. Neither partner could convey title as against the interest of the other partner, whatever that interest might be. Woods' interest was in the proceeds of the bonds only. He had no authority to dispose of the bonds, for, as against Pederson, he had only such title as the articles of partnership gave him. *Phillips v. Reeder*, 18 N. J. Eq. 95.

Affirmed.

MORRIS, C. J., ELLIS, FULLERTON, and MOUNT, JJ., concur.