[No. 15412.   Department One.   January 19, 1920.]

J. H. GORDON, *Plaintiff and Respondent,* v.
W. C. MARBURGER *et al., Defendants,*
W. J. AUMILLER, *Intervener
and Appellant.*[1]

PARTNERSHIP (38)—AUTHORITY—EXECUTION OF NOTE AND MORT-GAGE.   One member of a nontrading partnership for the growing of potatoes has no power to borrow money and mortgage the crop belonging to the firm, where he had no duties making it necessary and there was no custom of dealing authorizing it.

SAME (41)—ESTOPPEL TO DENY PARTNERSHIP.   The lender of money to the active member of a nontrading partnership for the growing of potatoes cannot claim want of notice of the partnership where he prepared the rent receipt evidencing the lease, which named the dormant partner as a member of the firm.

SAME (20)—FIRM NAME—RECORDING.   A nontrading partnership for the growing of potatoes is not within the recording act, Rem.

[1] Reported in 187 Pac. 354.

Code, § 8359, relating to limited partnerships for the transaction of mercantile, mechanical or manufacturing business.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered July 18, 1918, in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*James O. Cull (E. B. Preble, of counsel), for appellant.*

*Snively & Bounds, for respondent.*

PARKER, J.—The plaintiff, Gordon, commenced this action in the superior court for Yakima county against the defendant Marburger, seeking an accounting of their partnership affairs and the appointment of a receiver to take charge of their partnership property pending the settlement of their differences. The Growers Service Company was made a defendant because the remaining partnership property, consisting of potatoes, was stored in its warehouse. Arthur Karr was by the court appointed receiver, and by order of the court sold the potatoes stored in the service company's warehouse. The proceeds of the sale, after paying the storage charges and the expenses of the sale, amounted to $525. In the meantime, W. J. Aumiller filed in the receivership proceedings his complaint in intervention, seeking to have his claim, amounting to $300, established as a claim against the potatoes and the proceeds of the sale thereof. The case came on for trial upon the merits as to the accounting controversy between Gordon and Marburger; and also as to the claim of lien made by Aumiller against the potatoes and the proceeds thereof. Judgment was rendered decreeing Gordon to be entitled to the whole of the proceeds of the sale of the potatoes after the payment of the receivership expenses, by

reason of Marburger's appropriation of other property of the partnership. It was also adjudged that the relief prayed for by Aumiller be denied and his complaint in intervention be dismissed. From this disposition of the cause, Aumiller has appealed to this court.

The controlling facts touching Aumiller's claim against the potatoes and the proceeds of the sale thereof may be summarized as follows: On April 10, 1917, Marburger and Gordon entered into a partnership agreement looking to the raising of potatoes, during the crop season of 1917, on a certain ten-acre tract of land in Yakima county owned by Henry Pagel. Marburger was to do the work and superintend it in so far as labor was concerned, while Gordon was to furnish all money necessary for seed, for carrying on the work, for harvesting the potatoes, and for marketing the same. On April 30, Gordon, having furnished money therefor, Marburger paid Pagel $170 for the rent of the land, taking his receipt therefor, which receipt stated that the payment was for rent of the land until March, 1918, specifically described it, and that the payment was made by W. C. Marburger and J. H. Gordon. This receipt was all in typewriting, including its date of April 30, 1917, and was written by Aumiller at the request of Marburger. Gordon furnished sums from time to time from April to January, inclusive, in compliance with the partnership agreement, amounting in the aggregate to $1,370. These several sums seem to have been paid out by Gordon partly direct for labor and supplies and partly to Marburger so he could pay the expenses of the partnership. The evidence is all but conclusive that this $1,370 was considerably more in amount than sufficient to pay all legitimate expenses incident to the production and marketing of the crop. While Gordon

did not have the general superintendence of the farming and the raising of the crop, he visited the land at least once a month during the whole of the season from the planting to the harvesting, and did a small amount of work upon the crop. After the potatoes were harvested, a part of them were disposed of by Marburger and a part stored in the warehouse of the Growers Service Company, in the name of Marburger & Gordon. This was done by Marburger, the receipts therefor being issued in the name of Marburger & Gordon and delivered to him by the Growers Service Company. Marburger never accounted to Gordon for the portion of the potatoes disposed of by him, nor did he account to Aumiller for any portion thereof. It is plain that there was no effort or intention whatever on the part of Gordon to conceal the partnership relation existing between them from the public.

On June 12, 1917, Marburger borrowed from Aumiller $150, executing and delivering to Aumiller his note therefor, payable January 1, 1918. He, at the same time, executed and delivered to Aumiller a chattel mortgage upon the growing crop of potatoes to secure the payment of this note. This was done by Marburger individually in his own name. Thereafter, on November 1, Marburger again borrowed from Aumiller $50, executing his promissory note therefor, payable thirty days after date. No written security was given accompanying this note, but it was orally agreed between them that it be treated as being secured by the chattel mortgage already given. Thereafter, on January 12, 1918, Marburger again borrowed from Aumiller $100, no written evidence of any security accompanying this note, but Marburger promising that he would deliver to Aumiller the receipts issued by the Growers Service Company evidencing the storage of the potatoes in its warehouse. A few days

thereafter Marburger delivered four of such receipts to Aumiller, but without any indorsement thereon of any nature.

No contention is here made against the judgment of the trial court in so far as it awards the proceeds of the sale of the potatoes here involved to Gordon as against Marburger, so we proceed upon the assumption that the fund is the property of Gordon as between those two. It is conceded that the business relations between them was that of a nontrading partnership, and that Marburger's power to contract debts and encumber the partnership property was limited accordingly. In *Snively v. Matheson,* 12 Wash. 88, 40 Pac. 628, 50 Am. St. 877, Judge Dunbar, reviewing the law touching the power of one partner of a nontrading partnership to bind the other partners of the partnership property to the detriment of the other partners, speaking for the court, said:

"The presumption is that one partner has no power to bind the other partners. Hence, before recovery can be obtained upon a contract entered into by one partner in a non-trading partnership against the other partners, it must be affirmatively shown by the party attempting to bind the non-contracting partners, either that the authority to bind was conferred by the articles of copartnership, or that authority had been specially conferred, or that it had been the custom of such partnership to recognize this right to such an extent as would give innocent dealers a right to rely upon the custom."

It was also recognized as the law in that decision that in the doing of acts ordinarily necessary to be done by one partner in the performance of partnership duties assigned to such partner, he can bind the other partners and their interest in the partnership property. It is plain, however, that in this partnership Marburger had no duties to perform in the part-

nership business rendering it at all necessary for him to borrow money to further the partnership interests, nor was there any custom of dealing by either of the partners touching the partnership business in the least suggesting that Marburger was authorized to borrow money for the partnership or incumber its property. The contentions of counsel for Marburger are rested upon the theory that Gordon was a silent or dormant partner and that Aumiller was warranted in dealing with Marburger upon the assumption that he was the sole owner of the potatoes. It is true that Aumiller testified in substance that he had no notice of Gordon's interest in the potatoes until after he had made all of the three loans to Marburger. It is hard to believe that Aumiller was wholly ignorant of Gordon's interest in the potatoes, in view of the fact that Aumiller prepared the rent receipt evidencing the leasing of the land to both Marburger and Gordon for the raising of these potatoes. The chattel mortgage given by Marburger to Aumiller to secure the first loan of $150 described the crop of potatoes as being then growing upon the same land, describing it and referring to it as belonging to Henry Pagel, which mortgage was executed on June 12, only one month and twelve days after Aumiller had prepared the rent receipt for Marburger. Surely this ought to be held to be sufficient to at least put Aumiller upon inquiry as to the probability of Gordon being interested in the potatoes. This significant fact, together with the fact that Gordon made no effort to conceal, and did no act tending to conceal, the existence of the partnership relation between him and Marburger, and the fact that this was purely a nontrading partnership, we think, compels the conclusion that in no event can Aumiller at this time be heard to say, as against the rights of Gordon, that he was led to believe that Marburger

was the sole owner of the potatoes with absolute right to borrow money and secure the payment of the same by incumbering them. Our decisions in *Tilden v. Pederson,* 88 Wash. 254, 152 Pac. 1021, and *Woody v. Wagner,* 89 Wash. 429, 154 Pac. 819, lend support to this conclusion, though we do not cite these decisions as being exactly in point.

Some contention is made in behalf of Aumiller rested upon § 8359, Rem. Code, relating to limited partnerships, our recent decision in *Hanson v. Roesch,* 104 Wash. 257, 176 Pac. 349, and the fact that there were no articles of limited partnership filed in the county auditor's office evidencing the partnership relation of Marburger and Gordon. This is not a partnership such as is mentioned in, and the recording of the articles of which is contemplated by, § 8359, for it is not a partnership "for the transaction of mercantile, mechanical or manufacturing business."

The judgment is affirmed.

HOLCOMB, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.