[No. 29783. Department One. March 15, 1946.]

WALTER V. SWANSON, *Respondent,* v. WEBB TRACTOR &
EQUIPMENT COMPANY, *Appellant.*[1]

[1]Reported in 167 P. (2d) 146.

C. W. Halverson, for appellant.

Walter V. Swanson and D. H. Bonsted, for respondent.

STEINERT, J.—This action was brought by plaintiff, Walter V. Swanson, to recover an attorney's fee for legal services, together with an amount advanced by him for expenses, in certain prior litigation, and to have a lien for such fee established and foreclosed against the proceeds of two judgments procured for the defendant, Webb Tractor & Equipment Co., in the prior litigation.

The complaint alleged that between May 15, 1941, and April 7, 1944, plaintiff, at the special instance and request of the defendant, performed certain legal services for the defendant, involving the preparation of various instruments in writing, counseling with and advising the defendant, and, particularly, the prosecution to judgment of two actions in the state of Idaho, in each of which this defendant was plaintiff; that the judgments in those actions amounted to approximately fifty thousand dollars; that thereafter defendant settled and satisfied the judgments for the sum of approximately forty thousand dollars, and has ever since retained the cash proceeds thereof in a bank in Yakima; that plaintiff's services are reasonably worth $12,500, in addition to which he necessarily incurred expenses amounting to $168. Plaintiff prayed for judgment in the sum of $12,668; that a lien in the amount of his attorney's fee be established against the proceeds of the Idaho judgments held by the defendant; and that such lien be foreclosed.

In its answer, defendant admitted that plaintiff had performed legal services in connection with the litigation referred to above and admitted the amount of the former judgments and the subsequent settlement thereof, but denied the remaining allegations of the complaint. The answer further set forth three affirmative defenses.

In the first of these, defendant alleged that a firm of attorneys in Idaho was associated with the plaintiff as attorneys of record for the conduct of the two actions in that state; that after the judgments had been obtained therein, the defendants in those actions offered to pay in settlement of them the sum of forty thousand dollars; that defendant herein through its president, A. R. Webb, thereupon requested plaintiff and his associate counsel to submit a statement of charges for all legal services rendered by all of them in connection with that litigation; that Webb was then and there advised by plaintiff and the associate counsel that the total charge for such services would be eight thousand dollars; that, relying upon that advice, defendant accepted the offer of compromise, received the sum of forty thousand dollars in full settlement, and satisfied the judgments in those actions; that because of a dispute which concurrently had arisen between the plaintiff and his associate counsel concerning the division of the fee, defendant paid the sum of eight thousand dollars into the registry of the Idaho court; that thereafter a summary proceeding was instituted in that court, pursuant to the statutes and law of that state, wherein it was determined that one third of the total fee should be paid to this plaintiff, and the other two thirds to his associate counsel; that prior to the final determination of that proceeding process was duly served upon plaintiff but he declined to appear; that thereafter, the clerk of that court duly tendered to the plaintiff the sum of $2,666.67, being one third of the total fee, but that plaintiff refused to accept the tender; that such sum has at all times been available to the plaintiff; and that the order made by the Idaho court in that proceeding is a final and binding order and judgment, from which no appeal has been taken, and is therefore entitled to full faith and credit.

As a second affirmative defense, defendant alleged that, prior to the commencement of this action, plaintiff and his associate counsel agreed with this defendant that the total fee to be charged for all of their services in connection with the former litigation should be eight thousand dollars; that such fee was to be divided among them on the basis of one

third to plaintiff and two thirds to associate counsel; and that such proposed division was in accordance with the usual and established custom between forwarding and receiving attorneys.

For a third affirmative defense, defendant alleged that the reasonable value of all of plaintiff's services performed for the defendant did not exceed the sum of $2,666.67, which amount was tendered to, and refused by, the plaintiff, and has ever since been maintained for him.

In his reply, plaintiff admitted that a purported summary proceeding as set forth in defendant's answer was instituted in the Idaho state court, resulting in an alleged distribution of the eight thousand dollars which had been paid into that court, but denied that such proceeding had any validity whatever, and further denied all of the remaining material allegations of the answer and the three affirmative defenses.

After issues were joined, the present cause was tried to a jury, which returned a verdict in favor of the plaintiff in the sum of $4,168. The court thereupon entered judgment on the verdict, but did not establish any lien upon the proceeds of the former judgments obtained by this defendant, as plaintiff in the Idaho actions. From the judgment herein, defendant appealed.

The issues involved in this appeal can be more satisfactorily presented and considered if the facts upon which they rest are clearly understood, and we will therefore refer to the evidence in some detail.

Respondent, Walter V. Swanson, is an attorney at law residing in the city of Yakima and has had seventeen years' experience in the active practice of law. Appellant, Webb Tractor & Equipment Co., is a corporation engaged in the business of handling and distributing tractors and other heavy machinery and equipment, and in the conduct of its business acts as agent for various manufacturers and distributors of such supplies. Its main office is in Yakima, but it also has branch offices in various other cities and transacts business throughout central Washington and neighboring states. Respondent has been the attorney for the appellant since 1934 or 1935.

In the latter part of 1940, appellant leased to L. Romano Engineering Co. three Model C tournapulls, which are heavy tractors used in moving earth. The rental reserved in the leases was forty dollars a day for each machine, with the option in the lessee to purchase the machines at a price of $10,675 each. The Romano company used these tournapulls in the construction of a dike near St. Maries, in the state of Idaho, under a contract with the Federal government involving approximately $290,000. In the latter part of May, 1941, appellant also leased to the Romano company four Super C tournapulls to be used for the same purpose. The total rental reserved in that lease was $49,960, with the option in the lessee to purchase these four machines at any time at that same total amount.

At the time this latter lease was being considered, and prior to its execution, appellant had been having some difficulty with the Romano company under the preceding leases, particularly because of Romano's failure to pay the rental installments promptly, and for that reason Mr. Webb on or about May 15, 1941, consulted respondent in that regard and also with respect to the form of the latter lease and the advisability of entering into it.

Shortly after the execution of that lease on May 27, 1941, Mr. Webb became much concerned about his recent transactions with the Romano company. Not only was that company delinquent in the rental payments, but also it had come to the knowledge of Webb, through one of his men who looked after the repair of the machinery while on the job, that the tournapulls were being misused and abused by the employees of the Romano company, to the extent, as he estimated it, of one hundred dollars a day. Webb thereupon consulted respondent, and, after some conferences, it was decided that he and the respondent should go to St. Maries, investigate the conditions, and consult with the Romanos. A trip from Yakima to St. Maries and return, including the transaction of any business thereon, ordinarily consumes three days.

On or about June 15, 1941, Webb and respondent went to St. Maries and after they had spent the better part of a day

watching the operations of the tournapulls and consulting with Romano, their worst fears as to the misuse and abuse of the machinery were confirmed. Romano had also taken a very belligerent attitude, threatening not only to keep the machinery without paying for it, but also to get back from appellant the down payment of ten thousand dollars recently made on the four Model C Super tournapulls.

On their return from St. Maries to Yakima, both Webb and respondent felt convinced that legal action of some sort would have to be taken as soon as possible, in order to protect appellant's property and its rights under the lease agreements. This posed a serious question, however, owing to the many complexities involved. Respondent spent the greater part of the next two weeks in his library studying the various angles of the situation and consulting the legal authorities touching the subject. He finally evolved a plan under which he proposed to institute a suit against the Romano company, in Idaho, for the rentals due and owing to appellant and at the same time have a writ of attachment levied upon certain property owned by the Romano company, thus either causing a shutdown of the entire operations or else forcing Romano to execute a counterbond for the discharge of the attachment. The plan also contemplated a second suit, in the same jurisdiction, to replevin the entire equipment owned by the appellant, thus also either effecting a shutdown of operations or else forcing Romano to execute a redelivery bond.

With this plan fully developed and agreed upon, Webb and respondent made a second trip to Idaho, about the middle of July, 1941. Respondent, however, was not admitted to practice law in that state, and it was therefore understood between him and Webb that associate counsel, resident in Coeur d'Alene, Idaho, about forty miles distant from St. Maries, would have to be employed.

Upon their arrival in Coeur d'Alene, and after an unsuccessful attempt to engage the services of a particular attorney in that city, Webb and respondent went to the offices of Whitla & Knudson, attorneys at law, resident in that same city. Respondent did not know either of those

attorneys, but Webb, it later transpired, had known Mr. Knudson in earlier years. The purpose of their call having been made known, Webb and respondent held a conference with both of those attorneys for the better part of the day, going into full and complete details concerning the matter and discussing the form of procedure to be followed. Through the joint efforts of the three attorneys a complaint was drafted, revised, and put into final form. The suit was started by filing the complaint, on which the names of Whitla & Knudson and the respondent appeared as attorneys of record for the plaintiff, Webb Tractor & Equipment Co., appellant herein; this was followed by the issuance of a writ of attachment, for which respondent procured a bond in the sum of $17,060. Respondent and Mr. Whitla took the writ of attachment to St. Maries and there procured a deputy sheriff, who levied the writ upon certain property pointed out by the attorneys.

On or about July 21, 1944, respondent, with Webb, again went to Coeur d'Alene, and the second complaint was similarly prepared in the office of Whitla & Knudson; the second suit was instituted about July 29th. This required the execution of a replevin bond in the sum of sixty thousand dollars, which respondent, after much difficulty, procured. The two actions involved claims amounting to approximately sixty thousand dollars.

In the meantime, the Romano company posted a bond for the discharge of the writ of attachment which had been issued in the first action.

After the second suit was started, an attempt was made to take possession of the equipment under a writ of replevin. The property had been distrained for unpaid taxes, however, and respondent had considerable difficulty in getting it released from the distraint. This was finally accomplished by effecting a compromise of the amount of the taxes and paying the amount thus agreed upon. Further difficulty was encountered in getting from the Idaho highway department permission to move the heavy machinery over the state highways. This matter was also adjusted by the re-

spondent, and eventually the replevied equipment was brought back to the state of Washington.

In response to the two complaints, the Romano company appeared and vigorously contested the actions. In its answers it set up cross-complaints against the appellant in amounts aggregating seventy-eight thousand dollars. The pleadings on the part of both litigants in those actions were amended several times, and it is conceded that all matters in that respect and also with reference to the trial were conducted by Whitla & Knudson. The two cases were consolidated for trial and were tried during the week of June 7, 1943, about two years after the suits were instituted. During that period respondent made as many as four or five more trips to Coeur d'Alene and St. Maries to familiarize himself with the steps being taken in the course of the actions and to ascertain how matters were progressing.

Up to this point the matter of attorneys' fees had never been discussed between Webb and respondent, or between respondent and the firm of Whitla & Knudson, nor had any retainer fee been paid.

At the insistence of his associate counsel, respondent attended the trial, which lasted almost a week, and at the trial counseled with the other attorneys, although he took no part in the examination of the witnesses or the argument to the court and jury. He had previously, however, interviewed the witnesses and had given the results of his investigations to the associate counsel.

The jury before which the case was tried returned a verdict in favor of the appellant, the plaintiff in the consolidated cases, in the sum of approximately fifty thousand dollars and also found against the Romano company on its cross-complaints. Judgments were rendered accordingly. The Romano company thereupon appealed to the supreme court of Idaho.

While the appeal was pending, respondent contemplated, and made preparation for, bringing suit in the state of Washington on the judgments obtained in the state of Idaho. That suit, however, for some reason or other was never filed.

In November, 1943, Whitla & Knudson and the respondent had some correspondence with each other relative to fixing their fees for services in the litigation. Mr. Whitla suggested by letter that he come to Yakima to discuss the matter with respondent and Webb. This was not only agreeable to, but also was desired by, the respondent. However, owing to the press of other business Mr. Whitla was never able to fulfill that engagement.

Sometime during the month of March, 1944, about two weeks before the expiration of the time within which the Romano company's brief was required to be on file in the supreme court of Idaho, the attorney for that company approached Whitla & Knudson, in Coeur d'Alene, with the view of a compromise and settlement. He indicated that his client would pay forty thousand dollars in settlement and satisfaction of the two judgments. Mr. Whitla and Mr. Knudson endeavored at once to get in touch with both the respondent and Mr. Webb. Respondent was at the time engaged in a Federal court trial in Seattle, however, and contact with him could not be effected. Mr. Webb was reached by telephone and, in response to the request of the Idaho attorneys, went at once to Coeur d'Alene to confer with them on the matter.

When advised as to the amount to be paid under the proposed settlement, Webb inquired as to what the total amount of the attorneys' fees would be. After some discussion between himself and the two members of the firm of Whitla & Knudson, it was agreed among them that the total charge for the fees of all three attorneys would be eight thousand dollars. Respondent was not present at that conference, however, and knew nothing about the agreement until Mr. Whitla called him by telephone a day or two later.

Under the statutes of the state of Idaho, the measure and mode of compensation of attorneys and counsellors at law is left to the agreement, express or implied, of the parties, in so far as it is not restrained by law. Idaho Code Annotated (1932 Official ed.) § 3-205. A similar provision

obtains in this state. Rem. Rev. Stat., § 474 [P. P. C. § 22-1].

The Idaho statute also provides:

"From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment."

Our statute, Rem. Rev. Stat., § 136 [P. P. C. § 273-61], contains somewhat similar provisions, though not so stringently favorable to attorneys.

Because of the provisions of the Idaho statute above quoted, the attorney for the Romano company insisted upon the execution of a formal written satisfaction of the judgments, signed not only by the appellant herein but also by the Idaho attorneys and the respondent.

In the telephone conversation last above referred to between the Idaho attorneys and the respondent, a lengthy discussion was held among all three of them relative to the settlement and the division of the fee. Respondent thought the amount of the settlement was too small, and so expressed himself; at the same time he felt and stated that, owing to the possible hazards of a reversal of the judgments on appeal in the Idaho supreme court, the offer of settlement should be accepted. The main topic of that conversation, however, had reference to the division of the fee. Whitla & Knudson insisted that they were entitled to receive two thirds of the eight thousand dollars, and the respondent one third. Respondent strenuously objected to such a division, and took the position that the amount of work done by him called for an equal division between himself and the Idaho firm. He did suggest a willingness, however, to take thirty-five hundred dollars out of that amount and apply it on his total charges against his own client, the appellant herein. Further correspondence of the same general tenor followed shortly thereafter, but no agreement was ever reached.

In the meantime, Whitla & Knudson proceeded with the negotiations for settlement with the Romano company's attorney, and on or about March 30, 1944, appellant and the Idaho attorneys executed, but did not then deliver, a satisfaction of the judgments, in the form required. That instrument contained no reference to attorneys' fee, either as to total amount or as to division thereof.

A few days later, Mr. Webb brought the instrument of satisfaction to the respondent in Yakima for his signature. Respondent was willing to, and did, sign the instrument in order that the settlement could be made if appellant so desired, but emphatically stated that he would not accept one third of the eight thousand dollars as full compensation for the services he had rendered to the appellant with respect to the Romano matter during the past three years. Considerable heat developed in that conference between respondent and Webb, the former stating that he would not allow other attorneys to fix his fees but that he would render his own bill for services, and the latter just as stubbornly taking the position that he would pay no more than eight thousand dollars altogether, permitting the attorneys to determine, or fight out, the division among themselves. Respondent offered to submit the matter to arbitration to be conducted by any attorney or set of attorneys in Yakima. Webb retorted that he would "arbitrate" only in court. The conference ended at that point.

Appellant thereafter returned the satisfaction of judgments, signed by all of the necessary parties as required, to the Idaho attorneys, and in the next few days the settlement was completed by the delivery of the satisfaction to Romano's attorney and the payment of forty thousand dollars to appellant.

No division of the eight thousand dollars having been agreed upon, and no likelihood of any agreement being contemplated, appellant paid that amount into the registry of the Idaho court. A few days later, a summary proceeding was instituted in that court at the instance of appellant or of the Idaho attorneys, having for its purpose a judicial determination of the division and distribution of that fund among

the three attorneys. Whitla & Knudson appeared in that proceeding, in response to the citation served upon them, but respondent, who also was served with such process, did not appear. The Idaho court heard the matter and awarded Whitla & Knudson two thirds, or $5,333.33, of the amount deposited, and respondent one third, or $2,666.67. The clerk then sent a check or warrant for the latter amount to the respondent, who promptly returned it to the sender.

At about this time, respondent instituted the present action against the appellant. The subsequent trial before a jury lasted several days, and a great deal of evidence, oral and written, was introduced. Three attorneys, testifying on behalf of the respondent, fixed the value of his services in amounts ranging from $7,500 to $15,000; two other attorneys, testifying for appellant, fixed it at $2,500 and $2,666.67, respectively. The jury returned a verdict for the respondent in the sum of $4,168, which, it will be observed, is exactly one half of the $8,000 fee, plus respondent's expenses in the sum of $168.

This completes our statement of the facts as the jury was warranted in finding them from the evidence. We now proceed to the questions raised upon the appeal.

■ One of appellant's contentions, though not the first in order, is that the value of respondent's services did not exceed the sum of $2,666.67, the amount awarded to him in the summary proceeding had in the Idaho court. With that contention we do not agree. In addition to the voluminous evidence introduced by the respondent through his own testimony, supported by a series of written documents, we have the testimony of three reputable attorneys fixing the reasonable value of the services at considerably more than the amount asserted by the appellant. The verdict is well within the amount fixed by respondent's witnesses and is amply supported by the evidence. Nothing more need be said on that subject.

■ Appellant's next contention is that the action which was instituted by the respondent could be maintained only in the Idaho court, and that the judgment of that court in the summary proceeding is binding upon the respondent.

With respect to the first part of this contention, it is to be remembered that, although respondent in his complaint asked that he be granted a lien for the amount found to be owing him as against the proceeds of the Idaho judgments and that such lien be foreclosed, his primary and essential cause of action was simply for the recovery of the value of his services. It will also be recalled that the judgment in this case did not establish any lien, but simply granted a general recovery for those services. Whether or not the superior court for Yakima county could establish such a lien in this action, we are not called upon to decide. Both the respondent and the appellant were residents of Yakima county, and the superior court of that county, having jurisdiction of the subject matter and of the parties, could render a valid judgment unless it is held that the judgments in the Idaho court are *res judicata* of the claim here involved. It is necessary, therefore, to go further into that phase of the case.

After the settlement between the appellant and the Romano company had been completed and the satisfaction of the Idaho judgments filed, as related above, Whitla & Knudson notified appellant that, in accordance with the provisions of the Idaho statute above quoted, they claimed a lien on its causes of action and on the amount recovered by the judgments. Appellant thereupon, under date of April 7, 1944, addressed a letter to the clerk of the district court in which those judgments had been procured, to the effect that the amount payable to all of its attorneys had been agreed upon, but that a dispute had lately arisen among the attorneys as to the division; for that reason, as stated in the letter, appellant paid into court the sum of eight thousand dollars, to be disbursed as the attorneys might agree or as the court might otherwise determine.

The clerk thereupon filed in the two causes, referred to above, his petition reciting that a controversy had arisen among the attorneys regarding the share or proportion that each should receive from the eight thousand dollars, and praying that citations issue to the attorneys directing them to file their respective claims thereto. Citations were there-

upon issued and were served upon Whitla & Knudson in Idaho and upon respondent in Washington. That proceeding was taken pursuant to Idaho Code Annotated (1932 Official ed.) § 1-1622, which provides:

"INCIDENTAL MEANS TO EXERCISE JURISDICTION.—When jurisdiction is, by this code, or by any other statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction if the course of proceedings be not specially pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

At the hearing upon the clerk's petition, Whitla & Knudson appeared and presented their claim, but respondent did not appear. The Idaho court thereupon entered an order, under date of May 18, 1944, directing that the sum of eight thousand dollars deposited in court be disbursed in the proportion of two thirds to the firm of Whitla & Knudson and one third to the respondent, and that, upon such disbursement, none of the attorneys should have any further lien upon appellant's causes of action or prior judgments.

Respondent contends that these proceedings were irregular and invalid as to him because he, being a nonresident of Idaho, was not amenable to process issued out of a court in that state and therefore was not required to submit himself to the jurisdiction of that court.

■ We do not presume to say that the proceeding in the Idaho court was either invalid or irregular, or that the court's order therein was not binding, in so far as that court had jurisdiction of the subject matter, namely, the distribution of a fund then within the custody of the court. On the contrary, we are satisfied that the court was fully empowered to distribute that particular fund as it did and by the procedure which it employed. However, that court could not compel respondent, a nonresident, to come into that jurisdiction and litigate therein his claim for compensation for services rendered to his client, also a nonresident of the state of Idaho. What that court in effect did by its

order, and what it rightfully could do, was to *distribute* a fund then within its jurisdiction and simultaneously relieve appellant's causes of action and judgments therein from any further lien for attorney's fees.

Appellant relies strongly on two cases, *Noell v. Missouri Pac. R. Co.*, 335 Mo. 687, 74 S. W. (2d) 7, 94 A. L. R. 684, and *McCallum v. B. & O. R. Co.*, 379 Ill. 60, 39 N. E. (2d) 340.

In the *Noell* case, *supra*, the facts were as follows: Noell, an attorney residing and practicing law in Missouri, was retained by a widow to bring suit against a railroad company for the death of her husband caused by an accident occurring in Arkansas. His contract with his client was for a contingent fee of forty per cent of the amount collected by him. The suit was instituted in St. Louis, Missouri. Later, the widow employed attorneys in the state of Arkansas and those attorneys brought a similar action in that state and obtained a judgment against the railroad company in the sum of $17,500. The Arkansas attorneys then commenced an action against the widow and the railroad company in that state, asserting in that action a lien upon the judgment. The railroad company filed its answer and also a cross-complaint against Noell requiring him to set forth his claim of lien upon the recovery; at the direction of the court, the company also paid into the court's registry the amount of the judgment. Summons and copies of the complaint and cross-complaint were served upon Noell in Missouri, but he failed to appear. The Arkansas court entered a decree adjudging that Noell's contract with the widow be canceled and declaring that he had no interest in, nor lien upon, the amount recovered. Noell then commenced an action in Missouri against the railroad company to collect the sum of seven thousand dollars alleged by him to be forty per cent of the amount of the Arkansas judgment. It was Noell's contention upon the appeal in that case that the proceeding in Arkansas was an action *in personam* which would have no effect upon him, a nonresident, served with process outside the jurisdiction. Disposing of that contention adversely to him, the supreme court of Missouri said:

"It is, of course, fundamental law that one can only be bound by a proceeding *in personam* when he has been personally served within the jurisdiction. Strictly speaking, however, this proceeding [in Arkansas] was not a bill of interpleader but a proceeding to distribute property. Its object was not to bring rival claimants into court to litigate a dispute between them, but to distribute property already there. The property in this case, the Arkansas judgment, was the same as a fund already in the court's custody because the Arkansas court had the power to convert into an actual fund in its physical custody by compelling defendant [the railroad company] by judicial process to pay it. No other court did or ever could have custody of it. Therefore, that court alone had exclusive jurisdiction to dispose of it by determining the distribution of it and adjudicating plaintiff's lien upon it."

That case is fundamentally different from the one before us. There, the attorney's suit in Missouri was brought against the judgment debtor, the railroad company. Here, the suit is not against the judgment debtor, the Romano company, but against respondent's own client, the appellant herein. The Missouri court itself recognized that very distinction when it further said in its opinion:

"He [Noell], perhaps, is not bound by the part of its decree [in the Arkansas court] which went further and held his contract with his client to be absolutely void."

The Missouri case is, in fact, in accord with, and authority for, our own view that, in this instance, the Idaho court in its summary proceeding simply adjudicated the lien rights upon a fund within its custody and distributed that fund according to its determination of those rights; it did not purport to settle a dispute between the respondent and his client, the appellant, as to the reasonable value of the respondent's services. Respondent is in all probability foreclosed from asserting any claim against the eight thousand dollars beyond the amount distributed therefrom to him by the Idaho court, but he is not thereby foreclosed of the right to seek recovery from the appellant for the reasonable value of his services.

The *McCallum* case, *supra,* is distinguishable from the instant case upon the same grounds and for the same

reasons. We therefore hold that the respondent is not estopped to maintain the present action because of the proceeding taken and the judgment rendered in the Idaho action.

Appellant's next contention is that the trial court should have ruled, as a matter of law, that respondent and the firm of Whitla & Knudson composed a partnership for the handling of the Idaho litigation, and that the agreement between that firm and the appellant as to the amount of the fee is binding upon the respondent.

It will be borne in mind that, in considering the relationship between respondent and the firm of Whitla & Knudson, we are not dealing with a case involving the relationship existing between attorneys who together compose an established firm for the general or a specialized practice of law; nor are we here primarily concerned with the rules applicable to the division of fees earned by such firms. In this instance we are concerned solely with the relationship existing between one attorney and a firm composed of two other attorneys, who have, associated themselves together for the prosecution of a particular piece of litigation.

It may be conceded that, for lack of a more discriminating term, the relationship created and existing between parties engaged in prosecuting or defending a particular lawsuit constitutes a special or limited partnership, and that the rights and liabilities of the parties thereto are to be determined by the rules applicable to such form of partnership. *Bailey v. Griggs,* 174 Okla. 90, 49 P. (2d) 695. We have ourselves adopted that view in *Brauns v. Housden,* 195 Wash. 140, 79 P. (2d) 981.

It is a well-settled rule that the authority of a partner to act as agent for the partnership is limited to such transactions as are within the scope of the partnership business, and, conversely, that neither the partnership nor the other partners are bound by the unauthorized act of one partner in a matter not within the apparent scope of the business of the partnership. Crane, Partnership, 189, 207, §§ 49, 51; 1 Rowley, Modern Law of Partnership, 485 *et seq.,* §§ 411, 412, 413; 40 Am. Jur. 226, Partnership, § 137;

47 C. J. 830, Partnership, § 293; Uniform Partnership Act, § 9. See, also, *Merrill v. O'Bryan,* 48 Wash. 415, 93 Pac. 917.

 The powers, actual or implied, of a special partner are much more limited than those of a general partner, and the presumptions which arise from the one relationship are in some respects the converse of those arising from the other. In *Snively v. Matheson,* 12 Wash. 88, 40 Pac. 628, 50 Am. St. 877, we find this statement defining the distinction between a general partnership and a special, or non-trading, partnership:

"The general rule is that, so far as a general partnership, or, in other words, a trading or mercantile partnership, is concerned, each partner constitutes the other his agent for the purpose of entering into all contracts for him within the scope of the partnership business. This power rests in the usage of merchants and grew out of the necessities of commercial business. Therefore the doctrine of implied liability received the sanction of the law and has for a long time been, and now is, enforced by the courts. But this implied liability does not extend to partners in non-trading partnerships. In such cases the rule announced above is reversed and the presumption is that one partner has no power to bind the other partners. Hence, before recovery can be obtained upon a contract entered into by one partner in a non-trading partnership against the other partners, it must be affirmatively shown by the party attempting to bind the non-contracting partners, either that the authority to bind was conferred by the articles of incorporation [copartnership], or that authority had been specially conferred, or that it had been the custom of such partnership to recognize this right to such an extent as would give innocent dealers a right to rely upon the custom."

Express reiteration of that language, or expressions similar thereto, will be found in the following cases: *Tilden v. Pederson,* 88 Wash. 254, 152 Pac. 1021; *Gordon v. Marburger,* 109 Wash. 496, 187 Pac. 354, 9 A. L. R. 369; *Vancouver Nat. Bank v. Katz,* 142 Wash. 306, 252 Pac. 934; *Hyland v. City Garbage & Contracting Co.,* 9 Wn. (2d) 163, 114 P. (2d) 153.

 So far as third persons are concerned, the authority of a partner, whether he be a member of a general partnership or of a special partnership, must be found in the actual

agreement of the partners, or through implication arising from the nature of the business or the actual or usual manner in which it is conducted by the particular partnership or by similar partnerships in the same locality, or else from a reasonable inference of its necessity or fitness for the successful operation of the particular partnership business. *First Nat. Bank of Ann Arbor v. Farson*, 226 N. Y. 218, 123 N. E. 490. Accord: *Merrill v. O'Bryan, supra.*

In making application of these rules to the case at hand, we note that the relationship between the respondent and the Idaho firm of attorneys was that of a special partnership for the prosecution of a particular piece of litigation, with no antecedent association or connection between the attorneys; that, in the very nature of things, no articles of copartnership existed; that, as the jury must have found by its verdict, no agreement relative to the fixing of fees for all parties concerned was ever entered into between respondent and the Idaho attorneys, and no authority in that respect was ever conferred by respondent upon his associate counsel; and that no evidence was introduced showing the existence of a custom governing similar situations. While it might have been proper and, in this instance, very appropriate, for all of the attorneys and the appellant, at the time the litigation was started, to have had a definite agreement as to the amount of attorney's fees and the division of any part thereof, that was a matter separate and distinct from the conduct of the litigation itself. In fact, it appears in this case that the litigation was successfully prosecuted to judgment without any such agreement or understanding at all.

Aside from all this, however, it is not disputed that respondent refused to be bound by the purported agreement and emphatically so informed the appellant prior to the completion of the settlement between it and the Romano company. Appellant was not compelled to deliver to that company the satisfaction of judgments or accept the forty thousand dollars in full settlement. It could legally have refused to do so when it learned that respondent would not agree to the amount of compensation he was to receive

as represented by the Idaho attorneys. In the face of that knowledge, and with the determination to resist any claim that respondent might thereafter make, appellant, through its president and active manager, went ahead and settled the Romano litigation by delivering up the satisfaction of judgments and accepting in payment thereof the forty thousand dollars.

We are satisfied that, although the relationship between the attorneys was that of a special partnership, as we have heretofore defined that term, the trial court was correct in refusing to hold, as a matter of law, that the respondent was bound by the agreement made between the Idaho attorneys and the appellant.

The last assignment of error made by the appellant is addressed to certain instructions given by the court and certain other instructions requested by the appellant but refused by the court.

The instructions are too long to set forth in this opinion. The substance of appellant's exceptions, both to the instructions given and to the refusal to give others, is that they were misleading and prejudical in that the trial court made no reference to the question of partnership; that they permitted the jury to find the reasonable worth of respondent's services regardless of the number of lawyers engaged by the appellant; that they stated that one partner may disaffirm a settlement made by the remaining partners; that they failed to set forth the law with respect to the division of fees; and that they submitted the issue of whether there was a separate employment of the respondent by the appellant, concerning which there was no evidence.

Some of appellant's criticisms are met by other instructions given by the court and by other parts of the same instructions to which the exceptions were taken. Instructions must be considered as a whole, and a case will not be reversed for failure to incorporate all points in a single instruction, if sufficiently covered in other instructions. *Morran v. Chicago, M. & P. S. R. Co.*, 70 Wash. 114, 126 Pac. 73.

The questions of a special partnership arising out of

a joint employment, the basis upon which fees in such instances are to be divided, and the conditions under which one partner may disaffirm an agreement made between the other partners and the client were, in our opinion, sufficiently covered by the instructions when considered as a whole.

 We do agree with appellant in one respect, however. In one of the instructions, the trial court submitted to the jury the question of whether the employment of the respondent and the Idaho firm of attorneys for the prosecution of the particular litigation was separate or joint. There was no substantial evidence of a separate employment with respect to that litigation, and therefore the instruction should not have been given.

 However, the error in that respect was harmless. The evidence is without dispute that no provision was made concerning attorneys' fees prior to the time of the agreement made between the Idaho firm of attorneys and the appellant; that, prior to the time of that agreement, no authority in that respect had been conferred upon the Idaho attorneys by the respondent; that, when respondent was advised of that agreement, he promptly repudiated it; and that such repudiation, and the reasons therefor, were definitely made known to the appellant before it completed its settlement with the Romano company. The evidence, though in conflict, amply justified the jury in finding, as its verdict indicates, that respondent never agreed to accept a proportion of the eight thousand dollars in full payment for his services. Whether respondent's employment was separate or joint, the circumstances under which the appellant concluded the settlement with the Romano company left respondent no recourse other than to sue for the reasonable value of his own services, and the jury could not rightly have done otherwise, under its finding of the facts, than award him a recovery for such services. In other words, whether respondent's employment was separate or joint, the jury having found that there was no agreement on the part of the respondent to accept a proportion of the eight thousand dollars as full payment for his services, and

there being neither proof of actual authority resting in the Idaho attorneys to set the amount or division of fees, nor any conclusive inference in that respect arising out of the peculiar nature of the special partnership, the respondent was entitled to recover as for his reasonable compensation. The error to which we have alluded was therefore harmless. The other instructions given by the court sufficiently covered the issues and were not incorrect.

Finding no material error in the record, we direct that the judgment be affirmed.

DRIVER, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.

