[No. 2486-1.　Division One.　July 14, 1975.]

AMERICAN DISCOUNT CORPORATION, *Respondent*, v. SARATOGA WEST, INC., *et al, Defendants*, MISSION RIDGE ESTATES, *Appellant*.

*Whitmore & Warren* and *David J. Whitmore*, for appellant.

*A. J. Westberg*, for respondent.

WILLIAMS, C.J.—This action was commenced by American Discount Corporation against Saratoga West, Inc., to foreclose a real estate mortgage. After the action was instituted, Mission Ridge Estates, a limited partnership, filed a complaint in intervention based upon unsecured promissory notes issued by Saratoga West. Following a hearing, judgment was entered denying such complaint and foreclosing the mortgage. Mission Ridge's appeal, in which it was suc-

cessful, is reported in *American Discount Corp. v. Saratoga West, Inc.*, 81 Wn.2d 34, 499 P.2d 869 (1972).

When the case was returned to the Superior Court, American Discount answered the complaint in intervention, and the cause went to trial on the issue of whether the notes and mortgage of Saratoga West to American Discount should be subordinated to the claim of Mission Ridge on Saratoga West's unsecured notes, which totaled $77,839.85, plus $35,008.52 interest. The trial court found for American Discount, entering judgment confirming the foreclosure decree and dismissing the complaint of Mission Ridge with prejudice. This appeal followed.

Although some of the facts are recited in the earlier report, the evidence introduced at the trial on behalf of Mission Ridge gives a clearer understanding of the situation. Essentially, it appears that American Discount is a corporation owned by Edward F. Stern, Sr., and Sol Esfeld, which, for a number of years, has engaged in the loan business. Saratoga West is a corporation formed by Stern, Esfeld and two others, Elmer C. Hovik and Don Minor, for the purpose of developing a parcel of real estate located on Camano Island. It commenced business with paid-in capital of $60,000. Most of this was used to make the down payment on a contract for the purchase of the land to be developed. To finance the initial stages of the enterprise, American Discount agreed to advance $100,000 to Saratoga West, to be secured by a first mortgage (subject to the vendor's interest in the real estate contract) upon the real estate of Saratoga West. It was anticipated by all concerned, that once the development got under way, the flow of cash arising from the sale of lots would supply the remaining financial requirements.

American Discount loaned a total of $130,000 to Saratoga West before calling a halt. Saratoga West then borrowed $77,839.85 from Mission Ridge, as evidenced by a series of unsecured notes bearing interest at 12 percent per annum. This proved to be insufficient, Saratoga West defaulted on its obligations to American Discount, and the proceeding to

foreclose the mortgage was instituted. By its complaint in intervention, Mission Ridge seeks to have American Discount's mortgage subordinated to the unsecured notes, on the theory that Saratoga West was undercapitalized, and that the money loaned to it by American Discount, which was secured by the mortgage, was in reality a contribution to capital by Stern and Esfeld. The rationale for the theory is best expressed by Judge Learned Hand in *In re V. Loewer's Gambrinus Brewery Co.*, 167 F.2d 318, 320 (2d Cir. 1948), as follows:

Both the shareholders and the creditors in any enterprise assume some risk of its failure, but their risks are different. The shareholders stand to lose first, but in return they have all the winnings above the creditors' interest, if the venture is successful; on the other hand the creditors have only their interest, but they come first in distribution of the assets. Beneficially considered, the same persons are both creditors and shareholders, when they have organized into two corporations under a single control. If in such a case they are allowed to prove in insolvency on a parity with other creditors, as shareholders of the debtor they can use their control to take all the winnings which may be made on their advances while the company is successful, yet they will expose themselves only to creditors' risks, if it fails. That is unfair to other creditors regardless of whether they know that the shareholders of the debtor corporation have this power through their common ownership; for every creditor rightly assumes that his risk is measured by the collective claims of other creditors, and by creditors he understands those alone, who like him, have only a stipulated share in the profits. To compel him to divide the assets in insolvency with those who at their option have all along had power to take all the earnings, is to add to the risk which he accepted.

This reasoning only applies however to cases in which, as here, the shareholders are the same in both corporations, and in which the shares in each are divided so nearly alike that the majority in each can lawfully act for all in any dealings between the two. It may be asked why the same principle does not apply to a loan made by a single shareholder, at least to so much of any advance he may make as his shares represent of all the shares

outstanding. My answer is that, unless he also controls the debtor corporation, he cannot decide whether his loan shall be paid, or whether it shall remain as a part of the capital of the debtor contributing to profits in which he will share as one of the debtor's shareholders. Even to that limited extent he does not therefore enjoy the advantage of the ambivalent position of the shareholders collectively of two corporations under a common control.

■ Mission Ridge strenuously argues that the court should "pierce the corporate veil" of American Discount and thereby disclose that Stern and Esfeld defrauded the general creditors of Saratoga West by supplying it with insufficient initial capital and then securing their investment by the device of the first mortgage from Saratoga West to American Discount, which they own. It does seem that Stern and Esfeld placed themselves in the position of having "all the winnings" if the venture succeeded and all of the assets if the venture failed, as it did. The applicable law concerning the proposed disregard of the corporate entity of American Discount is stated by Division Two of this court in *Burns v. Norwesco Marine, Inc.*, 13 Wn. App. 414, 418, 535 P.2d 860 (1975), as follows:

The corporate form is of course frequently utilized to limit the personal liability of its officers, directors and shareholders. And as a general rule, the corporate entity will be respected by the courts. There are circumstances, however, in which the corporate form has been so abused that, in order to do justice, the corporate personality will be disregarded so long as the rights of innocent third parties are not prejudiced. *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.*, 33 Wn.2d 169, 205 P.2d 597 (1949). Although the facts have varied from case to case, the corporate entity has been disregarded when it is used to perpetuate a fraud or wrong, gain an unjust advantage or evade an obligation. *Allman Hubble Tugboat Co. v. Reliance Dev. Corp.*, 193 Wash. 234, 74 P.2d 985 (1938); *Associated Oil Co. v. Seiberling Rubber Co.*, 172 Wash. 204, 19 P.2d 940 (1933); *Pacific Fruit & Produce Co. v. Modern Food Stores, Inc.*, 158 Wash. 212, 290 P. 859 (1930); *Barnard Mfg. Co. v. Ralston Milling Co.*, 71 Wash. 659, 129 P. 389 (1913); *Harrison v. Puga*, 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971). *See*

*J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 392 P.2d 215 (1964); C. Horowitz, *Disregarding the Entity of Private Corporations*, 14 Wash. L. Rev. 285 (1939), 15 Wash. L. Rev. 1, 15-16 (1940); 1 F. O'Neal, *Close Corporations* § 1.09(a) (1971).

Frequently this occurs when the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist. *Kueckelhan v. Federal Old Line Ins. Co. (Mut.)*, 69 Wn.2d 392, 418 P.2d 443 (1966); *J.I. Case Credit Corp. v. Stark, supra*; *W.G. Platts, Inc. v. Platts*, 49 Wn.2d 203, 298 P. 2d 1107 (1956); *In re Estate of Trierweiler*, 5 Wn. App. 17, 486 P.2d 314 (1971).

The conclusion which the trial court reached was that Mission Ridge

> failed to bear its burden of proof to establish far-reaching and absence of good faith on the part of American Discount Corporation in its transactions with Saratoga West, Inc.

Conclusion of law No. 2, in part. This decision is supported by the findings of fact and the evidence in the record. Stern and Esfeld and their corporation, American Discount, did put a substantial amount of money into the enterprise. However, there is no showing that the use of the corporate form by Stern and Esfeld was an abuse. They did not have a scheme whereby they could gain preference over unsuspecting creditors, as was done in some of the cases cited by Mission Ridge. The vendor's interest in the contract of sale, the amount of paid-in capital with which Saratoga West commenced business, and the first mortgage to American Discount, were matters of public record. Mission Ridge had actual knowledge of the precise circumstances of the financing of Saratoga West through its managing partner, Hovik.

A critical and undisputed finding of fact is number 29, which reads as follows:

> Hovik and Minor had actual knowledge of the existence of the Saratoga West, Inc., mortgage to American Discount Corporation at the time Mission Ridge Estates made various loans to Saratoga West, Inc., and were

satisfied that said loans could be made upon an unsecured basis.

Hovik was the managing partner of Mission Ridge and Minor was its attorney.

In its opening brief, Mission Ridge does not challenge the authority of Hovik and Minor to make the unsecured loans to Saratoga West. It is true that the primary purpose of the partnership was to develop some land adjoining the Mission Ridge ski area in Chelan County. However, there is nothing in the articles of limited·partnership restricting it solely to that purpose, and by implication, it would seem reasonable that the managing partner had the authority to invest available cash at a return of interest. *Swanson v. Webb Tractor & Equip. Co.*, 24 Wn.2d 631, 167 P.2d 146 (1946).

In connection with the power of the general partners, and Hovik as managing partner in particular, it should be noted that the articles provide that a majority of the general partners have absolute discretion

> [t]o execute, acknowledge and deliver any and all instruments to effectuate the foregoing. *By way of extension of the foregoing and not in limitation thereof, the general partners shall possess all of the powers and rights of partners in a limited partnership without limited partners under the Partnership Law of the State of Washington.* However, whenever a decision shall have been made by a majority of the general partners in respect to any of the foregoing matters, said majority decision shall be binding upon all general partners and any action taken thereunder shall constitute the act of all general partners.

(Italics ours.) Articles of limited partnership, article 13(d)(5).

In its reply brief, Mission Ridge cites case authority to the effect that a managing partner stands in a fiduciary relationship to the other partners. There may be a cause of action against Hovik and Minor for double dealing, *Bassan v. Investment Exch. Corp.*, 83 Wn.2d 922, 524 P.2d 233 (1974), but that is not before this court. A claim of the limited partners against the general partners is not in-

volved, and insofar as Stern, Esfeld, and American Discount are concerned, the limited partners do not have standing to maintain an action. *Lieberman v. Atlantic Mut. Ins. Co.*, 62 Wn.2d 922, 385 P.2d 53 (1963).

Affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied September 29, 1975.

Review denied by Supreme Court November 24, 1975.